Harry D. BARNES, Jr., Plaintiff in Error,

v.

STATE of Oklahoma ex rel. W. Hendrix WOLF, County Attorney of Harmon County, State of Oklahoma (Now Paul D. Stumbaugh, County Attorney of Harmon County, State of Oklahoma), Defendant in Error.

No. 40138.

Supreme Court of Oklahoma.

June 25, 1963.

Garrett & Garrett, Mangum, for plaintiff in error.

Paul D. Stumbaugh, County Atty., Hollis, for defendant in error.

DAVISON, Justice.

Harry D. Barnes, Jr., (hereinafter referred to as intervenor) appeals from an adverse judgment denying his application to vacate and modify a prior judgment rendered August 23, 1960, enjoining the operation of a private club. The controversy involves the question of whether real estate and improvements now owned by intervenor may be used for the operation of a private bottle (liquor) club.

The record reflects that in 1959 one Marion Wade Hawkins was the owner of a corner lot in Hollis, Oklahoma, known as Lot 7, Block 2, Hobbs Addition, extending north and south and measuring 50 feet by 140 feet, and that as owner of said lot he applied for and there was issued to him a license for the operation of a retail package liquor store in a 30 foot by 30 foot building located on the south front portion of the lot. Thereafter Hawkins constructed a separate building (30 foot by 70 foot) on the north or rear 85 feet of said lot. These two buildings are about 4 feet apart. In the meantime Hawkins had deeded the south 55 feet of the lot, on which the liquor store was located, to himself and wife as joint tenants.

On August 12, 1960, W. Hendrix Wolf, the then county attorney of Harmon County, instituted this action against Hawkins and his wife and the Oklahoma Alcoholic Beverage Control Board, alleging in seven causes of action grounds for the granting of an injunction. The suit was later dismissed as to the Oklahoma Alcoholic Beverage Control Board. It was alleged that Hawkins and his wife, individually or together, and in violation of the State Constitution, statutes and city ordinances intended to operate an open saloon on the premises and that same would be a public nuisance; intended to operate a "drinking club" or "bottle club" where people would be a public nuisance; intended to open and operate a night club or dance hall where people would drink and become intoxicated and then drive automobiles with consequent wrecks and injuries; and prayed that such operation upon Lot 7, Block 2, Hobbs Addition, be enjoined. The action was tried August 23, 1960, and resulted in a permanent injunction being granted against Hawkins and his wife. In the judgment the court found the ownership of the lot and the existence of the package liquor store and the location of all improvements to be as above set forth that Lot 7 remained one unit, and that the package liquor store license covered all of the lot as the licensed premises. The court further found that the north (30 by 70 foot) building was appropriately furnished and

equipped and was to be leased for use as a private club organized as a drinking or bottle club where alcoholic beverages would be opened and consumed; that to all intents and purposes liquor would be sold by the drink and the place would be an open saloon in violation of the constitution and statutes of Oklahoma, and that "it would make no difference whether the club was on the licensed premises or not." The court further found and adjudged that Hawkins and his wife, their agents and assigns and lessees, be permanently and perpetually enjoined from opening up or operating in any manner a club of any nature in the north (30 by 70 foot) building or allowing in any manner the drinking of alcoholic beverages on said Lot 7, and that "the remainder of the petition be denied." There was no appeal. It is this injunction that intervenor, Harry D. Barnes, Jr., seeks to vacate or modify.

In 1961 intervenor and his wife acquired title to the south 55 feet (location of package liquor store) and intervenor, individually, acquired title to the north 85 feet (location of 30 by 70 foot club building).

On March 14, 1962, intervenor filed his application in the suit to vacate and modify the above judgment in so far as it covered the north 85 feet of Lot 7, complaining that the judgment unlawfully and illegally prohibits (permanently) the use thereof for the legal and lawful enterprise or business of operating a club for a place of recreation or the proper legal operation of a drinking or bottle club. Intervenor also alleged that the county attorney advised him that use of the property as a private club would result in a citation for contempt for violating the judgment. The successor county attorney filed answer with a plea inter alia of res judicata.

At the hearing on the application it was shown that the south part of the lot and the package liquor store had been leased to and was being operated by a third person; that the north area and club building had been tentatively leased to a corporation for cash rent for use in operating a private

(bottle) club for approved paid members and their accompanied guests only; that no intoxicating liquor would be sold, but that a member would bring his own bottle to drink from and that it was turned over to the bartender and labeled with the member's name and the member charged for the service and mix and ice in preparing the drink; and that the club had operated 2 or 3 days without incident, when the county attorney threatened a contempt charge and the operation was closed.

The county attorney introduced no evidence except to offer in evidence two city ordinances which, upon objection, were rejected by the court for lack of identification. One of these ordinances was tendered and appears from the copy to deal with the operation of a dance hall within 300 feet from where beer is sold. No copy of the other ordinance was proffered, but we deduce it is relative to package liquor stores.

The trial court refused to vacate or modify the original injunction judgment so as to permit the operation of a private club in the manner described in the testimony. However, the court modified the original judgment to substitute "private liquor club" for the words "private club" and to provide that the injunction remain in force and effect for so long a time as a retail liquor store was operated on said Lot 7. Intervenor has appealed from this judgment.

In the original action against Hawkins the alleged grounds for injunction were that the contemplated operation was in violation of city ordinances, the statutes and the constitution, and was also a public nuisance. None of the evidence presented in the original trial is before us, and we are consequently not advised as to the nature or mode of operation that Hawkins intended to pursue in the operation of a club or private liquor club. However, as reflected by our résumé of the original judgment and our careful examination of the journal entry it is our conclusion that the injunction was granted because, as

stated therein, the operation violated the applicable statutory and constitutional provisions and that "the remainder of the petition be denied." There was no finding or judgment that Hawkins' mode of operation was a nuisance or violated a city ordinance. Likewise the present appealed judgment denying the application of intervenor to vacate and modify the injunction (as applicable to him as an assignee of Hawkins), and in effect to approve the mode of operation reflected by intervenor's evidence, was denied as being "in violation of the statutes and constitution".

The trial court held in the appealed judgment that Lot 7 was one unit and drinking of liquor in the building on the north 85 feet would be drinking "on the same premises where a liquor store is situated," regardless of the separate buildings, and in effect regardless of the separate leasing and operations by the respective lessees. This conclusion was erroneous when considered in the light of the provisions of the constitution and statutes.

In the Constitution, Art. 27, Sec. 4, provides in part as follows:

" * * *. No goods, wares or merchandise shall be sold and no services shall be rendered on the same premises on which alcoholic beverages are sold. Premises are herein defined to be the entire space in which alcoholic beverages are sold or displayed and said premises must be separated from any premises on which any other goods, wares or merchandise are sold or services rendered by walls which may only be broken by a passageway to which the public is not admitted."

Title 37, O.S.1961, Sec. 506(20) states:

" 'Premises' includes the building, rooms, and equipment under the control of the licensee and used in connection with or in furtherance of the business covered by a license."

Title 37, O.S.1961, Sec. 534(a) is a restatement and elaboration of Const., Art. 27, Sec. 4, above quoted in part.

And 37 O.S.1961, Sec. 534(b) is as follows:

"Package stores licensed under this Act may sell only alcoholic beverages in retail containers as herein defined, in the original package for consumption off the premises; provided, all alcoholic beverages are to be sold at ordinary room temperature. All retail sales shall be made on the licensed premises and all deliveries off the premises, at retail, of intoxicating liquor or strong beer are hereby strictly prohibited and unlawful."

 From the definition of the term "premises" and the use of such term in connection with the restrictive and regulatory provisions of the Constitution and the Oklahoma Alcoholic Beverage Control Act (37 O.S.1961, Sec. 501, et seq.) it is our conclusion that such term as applied to retail package stores means the building, rooms and equipment therein under the control of such a licensee within which the licensee is authorized to make retail sales of alcoholic beverages. Under this interpretation the consumption of such beverages within the separate building located on the north 85 feet of the lot would not constitute consumption within or upon the premises of a retail package store.

 The appealed judgment makes no reference to or finding similar to the original judgment's adjudication that a private club originated as a bottle or drinking club would be an open saloon. This conclusion was based upon evidence or facts presented at the earlier trial. The Court of Criminal Appeals of Oklahoma has had occasion to consider this proposition since the rendition of the original judgment herein. In Harrell v. State, Okl.Cr., 359 P.2d 610, the court stated:

"The Court finds nothing in the Liquor Control Act (Oklahoma Alcoholic Beverage Control Act) which prohibits one from taking his own bottle to a private place and having drinks therefrom. He may have the drink mixed, and pay for that service, but

the drink must be from his own separate, distinct, and individual bottle, owned exclusively by him. When the bottle becomes co-mingled with other bottles and other drinks as to lose personal identification, birth is then given to the open saloon and dispensing liquor from the co-mingled pool for exchange becomes a sale."

A comparison of the present proposed mode of operation as reflected by the evidence discloses no distinguishing features from that recognized by the above court as not being contrary to said Act and the Constitution. Under such circumstances the use of the property in the outlined mode and manner was not unlawful.

It is urged by the county attorney in support of the judgment that the lower court was without authority or power to grant intervenor's application to vacate or modify the original injunction. The validity of this contention depends upon the nature of the action and the circumstances which were the grounds for granting the injunction.

■ This was an action for a permanent injunction to enjoin the operation and carrying on of an alleged unlawful business and is an action of equitable cognizance. Fahr v. State, 205 Okl. 244, 237 P.2d 128.

■ In Howard v. Berryman, 143 Okl. 258, 288 P. 605, 69 A.L.R. 1035, we held that an injunction operates in personam and is enforceable against the individual and not against property.

In 43 C.J.S. Injunctions, § 218, pp. 956, 957, it is stated:

"In the exercise of its inherent power, and without statutory authority or express retention in the decree of jurisdiction to modify, as well as where the decree itself reserves the right, a court which has rendered a final decree granting a permanent injunction may open, vacate, or modify such decree where the court believes the ends of justice would be served by

such action; where the continuance of the injunction is no longer warranted; where the circumstances and situation of the parties are shown to have so changed as to make it just and equitable to open, vacate, or modify the decree or inequitable, unfair, unjust, and oppressive to continue the injunction."

■ It is obvious that the trial court believed that it possessed this continuing power of modification when it substituted the term "private liquor club" for "private club" and limited the duration of the injunction to the time during which a retail liquor store was operated on the lot. As heretofore stated the intervenor has shown that the business operation sought to be now carried on in the building on the north portion of the lot is not unlawful. In our opinion the continuance of the injunction is no longer warranted. In United States v. Swift & Co., 286 U.S. 106, 76 L.Ed. 999, 52 S.Ct. 460, the court held:

"A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. * * * The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative. * * * The result is all one whether the decree has been entered after litigation or by consent. American Press Ass'n v. United States ([1917] C.C.A. [7th]) 245 F. 91 [LRA 1918A 1039]. In either event, a court does not abdicate its power to revoke or modify its mandate if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong."

See also Sontag Chain Stores Co. v. Superior Court (Cal.), 18 Cal.2d 92, 113 P.2d 689, and Annotation 136 A.L.R. 765.

It is our conclusion that the trial court should have vacated the injunction and allowed the operation of the business upon the premises. If the operation should be so conducted as to be unlawful then there are available remedies.

The question of whether the city ordinances apply or restrict the private liquor club operation is not before us. These ordinances, rightfully or wrongfully, were denied admission as evidence. No appeal was taken from the court's action.

Reversed and remanded with directions to render judgment for intervenor in accordance with the views herein expressed.